(947 P.2d 448)
No. 77,584

Kevin L. Adams, *Appellant,* v. Kansas Parole Board, *et al.,*
*Appellees.*

Opinion
filed August 1, 1997.

*Paula D. Hofaker,* of Logan, for appellant.

*James W. Coder,* assistant attorney general, and *Carla J. Stovall,* attorney general, for appellees.

Before Rulon, P.J., Wahl, S.J., and Richard M. Smith, District Judge, assigned.

Smith, J.: Kevin L. Adams appeals the district court's dismissal of his habeas corpus petition. He contends he should have been

conditionally released from his current sentence and should be currently serving his sentence for a subsequent conviction.

Adams has been serving a controlling prison sentence of 3 to 12 years. His conditional release date was originally set at April 5, 1995; his maximum release date is April 5, 2001. The case developed as follows:

| | |
|---|---|
| March 24, 1994: | Adams was paroled. |
| September 4, 1994: | Adams was arrested for violating the conditions of his parole, and new criminal charges were filed. |
| September 15, 1994: | A hearing officer found probable cause that Adams violated the conditions of his parole. |
| January 23, 1995: | Adams was convicted on a new charge. |
| March 30, 1995: | Adams was sentenced to 13 months' imprisonment for the new conviction. The sentencing court found that Adams' sentence begins date was October 27, 1994, and he was credited on that sentence with the 154 days between October 27, 1994, and March 30, 1995. |
| April 5, 1995: | Adams' conditional release date for his original offense arrived. |
| April 18, 1995: | Adams was recommitted to the state prison from the county jail. |
| May 10, 1995: | Adams' conditional release was revoked, and he was passed until May 1996 for further action. |

Adams filed this habeas corpus action claiming that because his conditional release date arrived while he was on parole, he should have been discharged from his 3- to 12-year sentence and he should currently be serving his subsequent 13-month sentence. The district court denied Adams' petition, finding the Kansas Parole Board (Board) properly revoked Adams' conditional release so that he was still serving his 3- to 12-year sentence and would serve his subsequent 13-month sentence thereafter. Adams appeals.

Adams argues that pursuant to K.S.A. 22-3717(f), he should have been conditionally released on April 5, 1995, from his current sentence and he should currently be serving his subsequent 13-month sentence. Resolving this issue requires construing the applicable statutes and administrative regulations. Generally, interpretation of statutes is a question of law, and this court's review of such issues

is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). The statutes governing this issue are supplemented by regulations promulgated by the Board. K.S.A. 22-3717(m). This court gives great weight to an agency's interpretation of its own regulations. *Hickey v. Kansas Corporation Comm'n*, 244 Kan. 71, 76, 765 P.2d 1108 (1988).

The pertinent part of K.S.A. 22-3717(f) provides that if a person commits a crime after July 1, 1993, while on parole, and the person is not eligible for retroactive application of the sentencing guidelines, "the new sentence shall not be aggregated with the old sentence, but shall begin when the person is paroled or reaches the conditional release date on the old sentence." Adams claims that under this statute, he should have been conditionally released on April 5, 1995, and should have started serving his subsequent 13 month sentence. Adams' claim is misplaced. The above-mentioned part of K.S.A. 22-3717(f) simply provides that a sentence for a crime committed while on parole must run consecutive to rather than concurrent with the sentence for which the offender has been paroled. K.S.A. 22-3717(f) in no way requires any inmate's conditional release and certainly does not require the conditional release of an inmate awaiting a parole revocation hearing.

K.S.A. 1996 Supp. 75-5217(d) governs parole violations and provides, in pertinent part:

"In the event the released inmate reaches conditional release date as provided by K.S.A. 22-3718 and amendments thereto after a finding of probable cause . . . of a violation of the released inmate's conditions of release, but prior to a hearing before the Kansas parole board, the secretary of corrections shall be authorized to detain the inmate until the hearing by the Kansas parole board. The secretary shall then enforce the order issued by the Kansas parole board."

This statute indicates that Adams was properly kept in confinement while awaiting his parole revocation hearing, despite the arrival of his conditional release date. Although this statute provides that the Secretary of Corrections shall enforce the Board's revocation order, this statute does not define the scope of the Board's authority in fashioning that order.

The Kansas Administrative Regulations define the Board's authority in fashioning orders pursuant to a revocation of parole or conditional release. K.A.R. 45-10-1 provides in pertinent part:

"(b) Conditional releasees shall be placed under parole supervision in the same manner as parolees. Conditional releasees shall be subject to the same terms and conditions as parolees while under supervision. If probable cause is established that a conditional releasee has violated the conditions of release, the conditional releasee may be returned to confinement upon determination of the secretary of corrections and thereafter, subject to the final hearing and order of the board, considered in the same manner as a parole violator. . . .

"(c) A parolee who achieves conditional release status while on parole, shall continue under supervision of the parole officer. The conditions of parole shall not be changed by the parolee reaching conditional releasee status."

This regulation indicates that a parole violation, in substance, also constitutes a violation of conditional release. Here, Adams' conditional release date arrived prior to his parole revocation. Thus, he achieved conditional release status while on parole and awaiting his parole revocation hearing. Because the conditions of parole are the same as the conditions of conditional release, Adams violated the conditions of his conditional release.

K.A.R. 45-9-3(a) provides, in pertinent part:

"The board may require an inmate whose parole has been revoked to serve all or any part of the remaining time on the sentence up to the original conditional release date, plus all good time forfeited by the board. The board may require an inmate whose conditional release has been revoked to serve all or any part of the remaining time on the sentence."

As explained above, by the time of the revocation hearing, Adams was on conditional release. The Board responded by revoking his conditional release. Thus, the second sentence in K.A.R. 45-9-3(a) quoted above governed the Board's authority regarding its revocation order: The Board had the authority to order Adams to serve all or any part of the time remaining on his 12-year sentence.

Adams argues that he was prejudiced by the Board's delay in holding the parole revocation hearing. To be entitled to habeas corpus relief due to a delay in the parole revocation hearing, Adams

must show both that he suffered prejudice as a result of the delay and, also, that the delay was unnecessary delay. *Parker v. State*, 247 Kan. 214, 216, 795 P.2d 68 (1990). To this end, K.A.R. 45-9-2(a) provides that parole revocation hearings "shall be held without unnecessary delay."

In *Parker*, the habeas petitioner was arrested for violating parole by committing new crimes, and the parole revocation hearing was delayed for 7 months during which time the State prosecuted Parker for the new offenses. Parker was incarcerated about a month and a half for violating parole before he became effectively incarcerated for the new offenses; after the prosecution of the new offenses, he was incarcerated another 2 months before the parole revocation hearing. In sum, he spent 3½ months incarcerated while awaiting his parole revocation hearing. The court held that, taking into account the prosecution of the new charges, the delay in holding the parole revocation hearing was not unreasonable. 247 Kan. at 216.

*Parker* is factually on all fours with the instant case. Here, Adams was arrested for the parole violation and the new offenses on September 4, 1994. The State prosecuted Adams for his new offense. Adams' sentence begins date for his new offenses was October 27, 1994, and he was credited on that sentence with the 154 days between October 27, 1994, and March 30, 1995. The revocation hearing was held on May 10, 1995. Thus, Adams spent about a month and a half incarcerated for the parole violation before the State initiated the prosecution of the new charges; Adams spent about 2 months awaiting his revocation hearing following the prosecution of the new charges. As in *Parker*, the delay of the revocation hearing was not unreasonable.

Adams placed himself, the Board, and the district court in this predicament by committing new crimes while he was on parole, just 8 months before his conditional release date. The inability of the district court and the Board to complete both the new criminal prosecution and the revocation hearing prior to Adams' conditional release date stems from the timing of Adams' own criminal actions rather than on a denial of any of Adams' rights.

Lastly, Adams argues that under K.A.R. 44-6-124(g), the Board should have revoked some of his good time credits rather than revoking his conditional release.

Adams' reliance on K.A.R. 44-6-124(g) is misplaced. K.A.R. 44-6-124(g) deals with disciplinary infractions while in prison, not with parole violations. Moreover, as explained above, if a revocation hearing takes place after the releasee's conditional release date, the Board may revoke the conditional release and require the offender to serve all or any part of the remainder of the sentence; the Board is not restricted to revoking the releasee's good time credits. Adams' revocation hearing took place after his conditional release date. As explained above, the timing of the revocation hearing was not improper. The Board properly exercised its authority by revoking Adams' conditional release and passing him to be reviewed a year later.

Affirmed.