No. 84,645

JEFFREY PARSONS, *Appellee/Cross-appellant,* v. LOUIS A. BRUCE, *et al., Appellants/Cross-appellees.*

(19 P.3d 127)

Opinion filed March 9, 2001.

*Timothy G. Madden,* chief legal counsel, Department of Corrections, argued the cause, and *Jon D. Graves,* special assistant attorney general, and *Carla J. Stovall,* attorney general, were with him on the briefs for appellants/cross-appellees.

*Sam S. Kepfield,* of Legal Services for Prisoners, Inc., argued the cause and was on the briefs for appellee/cross appellant.

The opinion of the court was delivered by

SIX, J.: This case concerns the interplay of K.S.A. 2000 Supp. 22-3718 statutory conditional release dates, parole under K.S.A.

2000 Supp. 22-3717(a), a violation while on parole, and *Stansbury v. Hannigan*, 265 Kan. 404, 960 P.2d 227, *cert. denied* 525 U.S. 1060 (1998). Our focus is on the calculation of petitioner Jeffrey Parsons' conditional release date. Respondents Louis A. Bruce and the Kansas Department of Corrections (KDOC) appeal the district court's decision to grant Parsons' K.S.A. 2000 Supp. 60-1501 petition for a writ of habeas corpus and conditionally release Parsons forthwith. The Court of Appeals affirmed.

Our jurisdiction arises from granting KDOC's petition for review. K.S.A. 20-3018(b).

We reverse the Court of Appeals and the district court.

## FACTS

Parsons is serving an aggregated term of 4 to 15 years on four separate counts: attempted enticement of a child (1-5 years); attempted burglary (1-5 years); theft (1-2 years); and a drug violation involving opiates, opium, or narcotics (3-10 years). Parsons' sentence began on March 15, 1991, and, with delinquent time lost on parole, his current sentence discharge date is July 20, 2005.

Under the 1993 amendment to K.A.R. 44-6-124, which authorized the withholding of good time credits, Parsons' conditional release date was originally computed as February 15, 1999. However, the Kansas Parole Board (Board) granted parole on May 1, 1998. Later, on June 5, 1998, in *Stansbury,* we found that retrospective application of the 1993 amendment to K.A.R. 44-6-124(g)(6) violated ex post facto principles. 265 Kan. at 417. K.A.R. 44-6-124(g)(6) (1994) provided:

"A refusal by an inmate to constructively work or participate in assigned programs shall result in the withholding of 100% of the good time credits for that program classification review period, unless the inmate is determined by the facility health authority to be physically or mentally incapable of working or participating in a particular program or detail."

KDOC, following the *Stansbury* holding, restored good time credits previously withheld from Parsons. Because of the application of good time credits, Parsons' conditional release date was moved to September 15, 1998. As of May 1, 1998, his parole date, Parsons was released from incarceration and was on parole supervision.

Parsons escaped supervision on September 9, 1998. He was returned to KDOC's custody on October 12, 1998. On December 16, 1998, the Board revoked Parsons' parole and ordered that he be assessed for sex offender treatment. On May 24, 1999, the Board rescinded its December 1998 order revoking parole and, instead, issued a new order revoking Parsons' conditional release. Parsons' case was passed for reconsideration to December 1999.

Parsons filed a K.S.A. 2000 Supp. 60-1501 petition for writ of habeas corpus. The district court ruled that the Board erred by rescinding its December 1998 order revoking parole. The district court also: (1) concluded that *Stansbury* did not have the effect of abrogating Parsons' original conditional release date (February 15, 1999), (2) granted Parsons' petition, and (3) found that Parsons "was entitled to be conditionally released after his revocation in December 1998, and is now entitled to be conditionally released forthwith." The district court granted KDOC's motion to stay until the issues are resolved on appeal.

KDOC appealed to the Court of Appeals. The Court of Appeals affirmed the district court's decision in an unpublished opinion, reasoning that Parsons' facts "are foursquare with the facts in *Muldrow v. Hanningan,* 27 Kan. App. 2d 662, 8 P.3d 12 (2000)." KDOC contends that *Adams v. Kansas Parole Board,* 24 Kan. App. 2d 388, 947 P.2d 448, *rev. denied* 263 Kan. 885 (1997), not *Muldrow,* controls. We granted KDOC's petition for review to consider a perceived conflict between *Muldrow* and *Adams* in applying the teaching of *Stansbury.* Parsons admits that he was conditionally released on February 8, 2000.

## DISCUSSION

We first must consider the threshold question of mootness. Parsons' admission of his release raises a question concerning the relief he requests. Parsons contends that the sentence computation issue here is not moot because the issue is likely to be repeated. His counsel identifies the issue here as one of first impression. Counsel describes Parsons' unique status as being released on parole and then being termed a conditional release violator. KDOC agrees the case is not moot because other inmates similarly situated are under

KDOC's control. We have said: "[W]here a particular issue, although moot, is one capable of repetition and one of public importance, an appellate court may consider the appeal and render an opinion." *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996). Thus, in the interest of judicial economy, and in reliance on counsels' representations as to the significance of a resolution, we choose to address the parties' contentions.

In its petition for review, KDOC, in accordance with Supreme Court Rule 8.03(a)(5)(c) (2000 Kan. Ct. R. Annot. 56), phrased the issue to be reviewed as: "Did the Court of Appeals err in affirming the district court's application of a conditional release date that was recognized by the parties as having been illegally computed?"

KDOC advances the same phrasing in its supplemental brief filed with this court identifying the issue to be decided on appeal. Parsons, rather than replying to KDOC's issue to be reviewed either under Rule 8.03(c)(3) or in its supplemental brief, states the issue as: "The Court of Appeals did not err in upholding the trial court's ruling that the KDOC violated appellee's liberty interest in conditional release by retroactively changing his parole to conditional release."

Resolution of the conflicting positions here involves a question of law. We have unlimited review. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). We agree with KDOC that the district court and the Court of Appeals erred by applying an illegally computed conditional release date and granting Parsons' conditional release.

The statutes governing the conflict are supplemented by regulations. The legislature by enacting K.S.A. 2000 Supp. 22-3717(l) mandated that the Board

"adopt rules and regulations in accordance with K.S.A. 77-415 *et seq.*, and amendments thereto, not inconsistent with the law and as it may deem proper or necessary, with respect to the conduct of parole hearings, postrelease supervision reviews, revocation hearings, orders of restitution, reimbursement of expenditures by the state board of indigents' defense services and other conditions to be imposed upon parolees or releases."

An agency's interpretation of administrative regulations which supplement statutes is to be given great weight by an appellate court.

*Hickey v. Kansas Corporation Comm'n,* 244 Kan. 71, 76, 765 P.2d 1108 (1988).

We acknowledge the distinction between conditional release and parole. A conditional release is mandatory, while parole is discretionary. *Beck v. Kansas Adult Authority,* 241 Kan. 13, 30, 735 P.2d 222 (1987). Except in a unique fact situation similar to *Muldrow,* parole will occur before a conditional release. See 27 Kan. App. 2d at 664. K.S.A. 2000 Supp. 22-3718 describes conditional release:

"[A]n inmate who has served the inmate's maximum term or terms, less such work and good behavior credits as have been earned, shall be subject to such written rules and conditions as the Kansas parole board may impose, until the expiration of the maximum term or terms for which the inmate was sentenced or until the inmate is otherwise discharged."

In contrast, K.S.A. 2000 Supp. 22-3717(a) says that an inmate "shall be eligible for parole after serving the entire minimum sentence imposed by the court, less good time credits." As KDOC correctly points out, under K.A.R. 45-10-1(c) if a parolee achieves conditional release status while on parole, as Parsons did, the conditions of parole are unchanged. The Board's regulation, K.A.R. 45-10-1, says in part:

"(b) Conditional releasees shall be placed under parole supervision in the same manner as parolees. Conditional releasees shall be subject to the same terms and conditions as parolees while under supervision. If probable cause is established that a conditional releasee has violated the conditions of release, the conditional releasee may be returned to confinement upon determination of the secretary of corrections and thereafter, subject to the final hearing and order of the board, considered in the same manner as a parole violator. The conditional releasee shall have the same rights at the final hearing as a parolee under K.A.R. 45-9-2.

"(c) A parolee who achieves conditional release status while on parole, shall continue under supervision of the parole officer. The conditions of parole shall not be changed by the parolee reaching conditional release status."

KDOC argues that *Adams,* 24 Kan. App. 2d 388, applies and that because Parsons was already on parole, the arrival of his conditional release date passes with no effect. We agree. Parsons was not in prison on September 15, 1998; thus, there was no need to release him from prison. If Parsons had not been released from

prison before September 15, 1998, K.S.A. 2000 Supp. 22-3718 would have mandated his release on that date.

A review of *Adams* is appropriate. Adams' conditional release date was set at April 5, 1995. He was released on parole on March 24, 1994. While paroled, Adams was arrested for violating the conditions of his parole, and new criminal charges were filed. In January 1995, he was convicted of a new charge. Then, before the April 5, 1995, conditional release date, Adams was sentenced to 13 months' incarceration for the new charge. On May 10, 1995, the Board revoked Adams' conditional release, and his case was passed for reconsideration to May 1996.

Adams filed a petition for writ of habeas corpus, claiming that because his conditional release date arrived while he was on parole, he should have been discharged from his previous sentence and should currently be serving the sentence on the new charge. The district court denied Adams' petition.

The *Adams* court noted that K.S.A. 1996 Supp. 75-5217(d) governed parole violations and provided in part:

"In the event the released inmate reaches conditional release date as provided by K.S.A. 22-3718 and amendments thereto after a finding of probable cause . . . of a violation of the released inmate's conditions of release, but prior to a hearing before the Kansas parole board, the secretary of corrections shall be authorized to detain the inmate until the hearing by the Kansas parole board. The secretary shall then enforce the order issued by the Kansas parole board."

Adams was properly kept in confinement while waiting for his parole hearing, even though his conditional release date arrived. Referring to K.A.R. 45-10-1, the *Adams* court said: "This regulation indicates that a parole violation, in substance, also constitutes a violation of conditional release." 24 Kan. App. 2d at 391. Adams' violation of his parole was the same as a violation of the conditions of his conditional release. The court said that K.A.R. 45-9-3(a) gave the Board the authority to revoke Adams' conditional release. 24 Kan. App. 2d at 391. K.A.R. 45-9-3(a) says in part:

"An offender whose parole has been revoked may be required by the board to serve all or any part of the remaining time on the sentence up to the original conditional release date, plus all good time forfeited by the board. An offender

whose conditional release has been revoked may be required by the board to serve all or any part of the remaining time on the sentence."

The *Adams* court reasoned that the parole board properly exercised its authority in revoking Adams' conditional release and passing him to be reviewed a year later. 24 Kan. App. 2d at 393. We agree with the *Adams* court's analysis.

The Court of Appeals here affirmed Parsons' habeas petition under *Muldrow*, 27 Kan. App. 2d 662. Muldrow was serving sentences on six cases. His controlling sentence was 5 to 17 years, with a present sentence beginning date of September 17, 1989. Muldrow was paroled on July 1, 1998. After testing positive for cocaine, his parole was revoked on August 25, 1998, and he was ordered to serve to his conditional release date of April 25, 1999.

Under *Stansbury*, Muldrow's good time credit was restored. Thus, his conditional release date was changed from April 25, 1999, to March 17, 1998. The Board later rescinded its August 25, 1998, order revoking his parole and issued a new order revoking his conditional release. His case was passed for reconsideration to May 1999. Muldrow argued that he had never been granted a conditional release and, therefore, it could not be revoked by the board.

Muldrow filed a petition for writ of habeas corpus, which was granted by the district court. The district court found that Muldrow's conditional release date was not abrogated by restoration of good time credits and held that he was entitled to the original conditional release date of April 25, 1999.

The Court of Appeals in *Muldrow* reasoned that KDOC's reliance on *Adams* was misplaced, saying: "*Adams* is factually distinguishable in many respects—most important is the fact that Adams' conditional release date remained constant." 27 Kan. App. 2d at 664. Muldrow's conditional release date was moved after his parole revocation to a date *before* he was released on parole (paroled July 1, 1998, parole revoked August 25, 1998; original conditional release date, April 25, 1999, new conditional release date March 17, 1998). The Court of Appeals described Muldrow's situation as "factually and legally unique." 27 Kan. App. 2d at 664. The *Muldrow* court found that the Board improperly revoked Muldrow's condi-

tional release date and that "[b]y hindsight . . . he should have been conditionally released on March 17, 1998." 27 Kan. App. 2d at 665.

Here, KDOC correctly asserts that the district court erred in finding that *Stansbury* did not abrogate Parsons' original conditional release date of February 15, 1999. However, in affirming the district court's opinion, the Court of Appeals corrected the error saying: "Parsons' conditional release date remains September 15, 1998." (The new post-*Stansbury* conditional release date.)

Parsons argues the Board improperly revoked his conditional release. One of Parsons' complaints appears to be that his conditional release was revoked before his pre-*Stansbury*, or *old* conditional release date (February 15, 1999), arrived. Such a complaint is not well taken. His conditional release date, as dictated by Stansbury, was September 15, 1998.

As in *Adams*, Parsons' conditional release date occurred *after* he was paroled and *before* his parole was revoked. Thus, Parsons achieved conditional release status while on parole. Under the reasoning in *Adams*, Parsons' parole violation also constituted a violation of the conditions of his conditional release. See *Adams*, 24 Kan. App. 2d at 391. We disapprove of any language in *Muldrow* suggesting a result contrary to our disposition here. The Board did not err in revoking Parsons' conditional release.

The Court of Appeals' decision affirming the district court is reversed. The judgment of the district court is reversed. The Board's order of May 24, 1999, rescinding the December 16, 1998, order of parole revocation and revoking Parsons' conditional release is reinstated.

Reversed.