NOT DESIGNATED FOR PUBLICATION

No. 116,515

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER M. HARRIS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER, JR., judge. Opinion filed January 19, 2018. Affirmed in part, reversed in part, and remanded with directions.

*Kimberly Streit Vogelsberg* and *Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.


PER CURIAM: Christopher M. Harris appeals from his conviction of criminal possession of a weapon by a convicted felon. Because we find the district court erred in granting the State's motion in limine and such error deprived Harris of a fair trial, we reverse the conviction and remand for a new trial.

1

FACTS

In February 2015 Gregory Swiger and Catherine Richard were walking to a liquor store when they came upon Christopher Harris. Swiger and Harris got into an argument, and Swiger stated that he was going to "whip [Harris'] butt." Swiger did not follow through on the threat, however, because he did not want to get in any trouble. Swiger testified that as he started to walk away, Harris pulled out a knife. Neither Swiger nor any other witness testified that Harris used the pocket knife in a threatening manner.

Officer Jesus Soto with the Wichita Police Department was in the area on an unrelated matter when he heard Swiger and Harris arguing. Soto turned on his patrol vehicle's spotlight and shined it on Harris as Harris began to walk away. Soto testified that Harris looked like he was walking with his arm held like he was trying to drop something. After speaking with Harris, Soto went to see if Harris had dropped anything. Soto found a pocketknife next to some bushes where Harris had been walking. Soto photographed the pocketknife and collected it.

Harris ultimately was charged with aggravated assault, criminal possession of a weapon by a convicted felon, and criminal use of weapons, a class A nonperson misdemeanor. Harris filed a motion to dismiss the count alleging criminal possession of a weapon by a convicted felon arguing that K.S.A. 2014 Supp. 21-6304(c) was unconstitutionally vague. The district court denied Harris' motion.

Before trial, the State filed a motion in limine to exclude evidence that Harris' parole officer advised Harris that he was permitted to carry a pocketknife. This evidence would have supported a mistake of law defense under K.S.A. 2014 Supp. 21-5207. The motion in limine also sought to exclude evidence in the form of excerpts from the Kansas Department of Corrections Division of Community and Field Services Supervision Handbook (KDOC Supervision Handbook), which specifically permitted an individual

like Harris to legally carry a pocketknife under K.S.A. 2014 Supp. 21-6304. This evidence also would have supported a mistake of law defense under K.S.A. 2014 Supp. 21-5207.

The district court granted the State's motion in limine. Harris filed a motion to reconsider, which also was denied. At the jury trial, Swiger and Officer Soto testified about the incident. Harris also testified, claiming he pulled his pocketknife on Swiger because he feared for his life. Harris further testified that he dropped his pocketknife when Soto approached him because he did not think it was a good idea to walk toward an officer with an open pocketknife. Harris was prohibited from presenting any testimony to support a mistake of law defense under K.S.A. 2014 Supp. 21-5207.

The district court instructed the jury on Harris' theory of self-defense. The court further instructed the jury that to find Harris guilty of criminal possession of a weapon by a convicted felon, the jury must find that Harris knowingly possessed a weapon. The court defined weapon as a "firearm or knife." "Knife" was defined as a "dagger, dirk, switchblade, stiletto, straight edged razor or any other dangerous or cutting instrument of the like character."

The jury found Harris not guilty on count 1, aggravated assault, and count 3, criminal use of weapons. Nevertheless, the jury found Harris guilty on count 2, criminal possession of a weapon by a convicted felon.

ANALYSIS

In appealing his conviction for criminal possession of a weapon by a convicted felon, Harris claims:  (1) the statute upon which his conviction is based is unconstitutionally vague; (2) the court erred when it excluded evidence to support his mistake of defense, i.e., that both his parole officer and the Department of Corrections

3

told him he could carry a pocketknife; (3) cumulative error denied him a fair trial; and (4) the district court violated his constitutional rights by considering his criminal history at sentencing. We address each of Harris' claims in turn.

1. *Constitutionality of K.S.A. 2014 Supp. 21-6304(c) as applied to Harris*

Harris was charged with criminal possession of a weapon by a convicted felon in violation of K.S.A. 2014 Supp. 21-6304(a). At trial, Harris stipulated to the fact that he was prohibited by law from possessing a weapon at the time of his arrest in the current case because of his status as a prior offender. Before trial, however, Harris filed a motion to dismiss count 2 of the complaint, which alleged criminal possession of a weapon by a convicted felon. In support of dismissal, Harris argued the broad definition of a knife as a weapon set forth K.S.A. 2014 Supp. 21-6304(c) is unconstitutionally vague as applied to him under the facts of this case. The district court denied Harris' motion. Harris appeals from this decision.

a. *Jurisdiction*

As a preliminary matter, the State argues this court does not have appellate jurisdiction to consider Harris' challenge to the constitutionality of K.S.A. 2014 Supp. 21-6304 because Harris failed to identify this issue in his notice of appeal. Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). An appellate court only obtains jurisdiction over the rulings identified in the notice of appeal. K.S.A. 2016 Supp. 60-2103(b) (requiring notice of appeal designate judgment or part of judgment being appealed). Appellate courts liberally construe the requirements of K.S.A. 2016 Supp. 60-2103(b) when determining whether the notice of appeal is sufficient. *State v. Laurel*, 299 Kan. 668, 673-74, 325 P.3d 1154 (2014). A generalized notice of appeal is sufficient to convey jurisdiction. *State v. Boyd*, 268 Kan. 600, 607-08, 999 P.2d 265

(2000). As part of its analysis, appellate courts typically will consider "whether the State has been prejudiced by a defendant's timely filed, but otherwise faulty notice of appeal." *Laurel*, 299 Kan. at 674.

In this case, Harris' notice of appeal contained two statements relevant to the issue of jurisdiction raised by the State. First, the notice of appeal had a general catchall sentence stating that Harris "appeals rulings and orders" made by the district court judge "prior to trial and during trial." The next statement is more specific:

> "[T]he rulings and orders from which appeal is taken are as follows: (1) The March 1, 2016, ruling and Order of the Court granting the State's Motion *in Limine* prohibiting the Defendant or his counsel or any witnesses called by the Defendant from testifying or advising the jury that the Defendant was told by his parole officer that he could possess the knife at issue. (2) The ruling and Order of the Court, upon a proffer of proof made during trial, that Defendant's parole officer could not testify that she advised Defendant he could possess the knife at issue and, further, that the booklet for parolees published by the Kansas Department of Corrections . . . which stated such a knife could be possessed by a parolee, could not be introduced into evidence through her testimony or by any other means."

Pointing to the fact that Harris failed to include a challenge to the constitutionality of K.S.A. 2014 Supp. 21-6304 in the second, more specific statement set forth in his notice of appeal, the State argues this court does not have jurisdiction to consider the issue.

In *State v. Ransom*, 268 Kan. 653, 999 P.2d 272 (2000), our Supreme Court addressed a challenge to jurisdiction similar to the one raised by the State here. On August 14, 1997, Ransom was adjudicated as a juvenile offender and certified to stand trial as an adult. On November 6, 1997, Ransom was sentenced after pleading no contest to the offenses charged. In his notice of appeal, Ransom stated he was appealing from the "'*judgment and sentence* of . . . November 6, 1997.'" 268 Kan. at 654. But the only issue

Ransom raised on appeal was the issue of his certification as an adult, which occurred on August 14, 1997. A panel of this court held the notice of appeal was insufficient to confer appellate jurisdiction because November 6 was not the date that Ransom was certified as an adult. See 268 Kan. at 654.

After granting Ransom's petition for review, the Kansas Supreme Court reversed this court's decision, finding that the appellate court did have jurisdiction to address the issue raised by Ransom because the additional words specifying "'November 6, 1997,'" were inconsequential. 268 Kan. at 655-56. In so finding, the court noted that if Ransom had added a period after the word "'sentence,'" the Court of Appeals undoubtedly would have had appellate jurisdiction. 268 Kan. at 655. The court also noted that the State did not claim, and there was no evidence to establish, that the State suffered any prejudice if appellate jurisdiction was found to exist. 268 Kan. at 656.

Like in *Ransom*, Harris' notice of appeal would be sufficient to confer appellate jurisdiction if he had not included a second sentence after the first general catchall sentence stating that he was appealing from "rulings and orders" made by the district court judge "prior to trial and during trial." Accordingly, we do not construe the second sentence providing additional language as a way of limiting the scope of Harris' appeal unless the State was somehow prejudiced. See *Ransom*, 268 Kan. at 655-56. The State does not claim prejudice. And given the State fully briefed and argued the issue below, it does not appear from the record that a claim of prejudice would be warranted. For these reasons, this court has jurisdiction over Harris' claim on appeal that the broad definition of knife set forth K.S.A. 2014 Supp. 21-6304(c)(1) is unconstitutionally vague as applied to him.

6

b. *Vagueness*

Whether a statute is constitutional is a question of law subject to unlimited review. *State v. McCaslin*, 291 Kan. 697, 730, 245 P.3d 1030 (2011), *overruled on other grounds by State v. Astorga*, 299 Kan. 395, 324 P.3d 1046 (2014). This court presumes that statutes are constitutional and resolves all doubts in favor of passing constitutional muster. If there is any reasonable way to construe a statute as constitutionally valid, this court has both the authority and duty to engage in such a construction. *State v. Seward*, 296 Kan. 979, 981, 297 P.3d 272 (2013).

Appellate courts employ a two-part test to determine whether a statute is unconstitutionally vague. First, the statute should give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *Dissmeyer v. State*, 292 Kan. 37, 39, 249 P.3d 444 (2011). Second, the statute should provide explicit standards for its enforcement so as to prevent arbitrary and discriminatory enforcement. *State v. Rupnick*, 280 Kan. 720, 737, 125 P.3d 541 (2005). "'A statute will not be declared void for vagueness when it employs words commonly used, previously judicially defined, or having a settled meaning in law.'" *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 334, 291 P.3d 1056 (2013). The test for vagueness is often described as a common-sense determination about fundamental fairness. *State v. Richardson*, 289 Kan. 118, 124, 209 P.3d 696 (2009).

The jury found Harris guilty of violating K.S.A. 2014 Supp. 21-6304, which prohibits possession of a weapon by a convicted felon under a variety of circumstances. Harris' conviction under this statute was based on his possession of a knife. Harris claims his conviction must be vacated, however, because the broad definition of knife set forth in K.S.A. 2014 Supp. 21-6304(a)(2) is unconstitutionally vague as applied to him. K.S.A. 2014 Supp. 21-6304(c)(2) defines a "'weapon'" as "a firearm or knife." Subsection (c)(1), meanwhile, defines a "'[k]nife'" as "a dagger, dirk, switchblade, stiletto, straight-edged

7

razor or any other dangerous or deadly cutting instrument of like character." Harris argues this definition is vague as applied to his conviction because "the district court and jury would have had to guess as to the meaning of 'of like character' and guess whether the statute prohibited [Harris'] pocketknife." Specifically, Harris argues that the statute "does not attempt to inform defendants or jurors which character must be akin to a dagger, dirk, switchblade, etc."

We are not persuaded by Harris' argument. Here, the phrase "of like character" is easily understood by a person of ordinary intelligence. The phrase employs words commonly used, and the context in which it is used provides additional guidance as to its meaning. Notably, the statute lists several examples of objects that qualify as a knife. A person of ordinary intelligence would understand that all of the specifically enumerated items are objects that have a sharp blade or edge. And contrary to Harris' assertion that the statute does not attempt to clarify which character must be akin to the specifically listed objects, the phrase "dangerous or deadly cutting instrument" does just that. In other words, it is not the length or width of an object that determines whether it is a knife, but whether, like the listed items, the object is a dangerous or deadly cutting instrument. In light of such language, Harris' assertion that a person could be convicted for possessing a "plastic butter knife" is without merit; it is hard to envision a scenario in which a plastic butter knife could qualify as a dangerous, let alone deadly, cutting instrument. In any event, Harris' assertion on this point is irrelevant when assessing whether the statute is vague as applied to his circumstances—as opposed to a claim that the statute is unconstitutionally vague on its face—because the charging document and the conviction were based on Harris possessing a pocketknife, not a plastic butter knife.

Simply put, Harris has failed to show the language of K.S.A. 2014 Supp. 21-6304(c)(1) is so vague that it fails to give warning to people of ordinary intelligence of the prohibited conduct or that the statute is susceptible to arbitrary and discriminatory enforcement.

8

2. *Evidence excluded*

a. *Error*

Harris argues the district court deprived him of the constitutional right to present his theory of defense under K.S.A. 2014 Supp. 21-5207(b)(4) (mistake of law) by excluding evidence that was an integral part of that theory: a letter he received from his parole officer and excerpts from the KDOC Supervision Handbook. Specifically, the letter from his parole officer stated that Harris was "allowed to have a pocket knife less than 4 inches in length while on post release. However, if the pocket knife is used in a threatening manner, then it can be viewed as a violation or as a crime." The excerpt from the Handbook permits an individual like Harris to legally carry a pocketknife under K.S.A. 2014 Supp. 21-6304. The Handbook states: "An ordinary pocket knife with a blade no longer than 4 inches is <u>not</u> considered by law to be a dangerous knife, or a dangerous or deadly weapon or instrument."

When the admission or exclusion of evidence is challenged on appeal, the first inquiry is relevance. *State v. McMullen*, 290 Kan. 1, 7, 221 P.3d 92 (2009). Evidence is relevant when it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). This encompasses whether the evidence is probative and whether it is material. Probative evidence furnishes, establishes, or contributes toward proof. *State v. Martinez*, 290 Kan. 992, 1009, 236 P.3d 481 (2010). The decision as to whether evidence is probative is reviewed for abuse of discretion. *State v. Dixon*, 289 Kan. 46, 69, 209 P.3d 675 (2009).

Material evidence is that which tends to establish a fact that is at issue and is significant under the substantive law of the case. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008). The determination whether evidence is material is reviewed under a de novo standard. *Martinez*, 290 Kan. at 1009. If relevance is established, the evidentiary

rules governing admission or exclusion of evidence are applied as a matter of law or in the exercise of judicial discretion, depending on the applicable rule. If the adequacy of the legal basis is questioned, we review the issue de novo. 290 Kan. at 1009 (citing *Dixon*, 289 Kan. at 70); *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006).

At the motion in limine hearing, the State requested the district court exclude the parole officer's letter and excerpts from the KDOC Supervision Handbook because the evidence was not relevant to any material fact presented for the jury's decision. Harris disagreed, arguing that the evidence was both probative and material to his mistake of law theory of defense under K.S.A. 2014 Supp. 21-5207(b)(4), which permits a defendant to use as a defense to a criminal charge the fact that the defendant reasonably acted in reliance on an official interpretation of the statute made by a public officer or agency legally authorized to interpret that statute.

The court ultimately granted the motion in limine, finding the letter from the parole officer did not have a tendency in reason to prove any material fact. Although conceding the parole officer was "arguably a public officer" as that term is used in the mistake of law statute, the court concluded the erroneous information given with regard to the terms and conditions of Harris' probation did not qualify as an official interpretation of the statute. Given its conclusion that the information transmitted by the parole officer was not an official interpretation of the statute under which the crime was charged, the court held the evidence was not relevant to the case.

On appeal, Harris argues the district court erred in finding that the letter he received from his parole officer and excerpts from the KDOC Supervision Handbook are not official interpretations of the statute under which he was charged made by a public officer or agency legally authorized to interpret that statute. For the reasons stated below, we agree.

10

We begin with some brief legislative history. Harris was charged with criminal possession of a weapon contrary to K.S.A. 2014 Supp. 21-6304(a)(3)(A). The offense was alleged to have occurred on February 16, 2015. The statute at issue was amended, effective July 1, 2014, about seven months before Harris was alleged to have committed his offense. Before July 1, 2014, the statute was entitled "Criminal possession of a firearm by a convicted felon" and subsection (a)(3)(A) prohibited "possession of any firearm by a person who: . . . within the preceding 10 years, has been convicted of [certain enumerated felonies]." K.S.A. 2013 Supp. 21-6304(a)(3)(A). Subsection (b) provided that "[c]riminal possession of a firearm by a convicted felon is a severity level 8, nonperson felony." K.S.A. 2013 Supp. 21-6304(b).

Effective July 1, 2014, the statute was amended. Although the title of the statute— Criminal possession of a *firearm* by a convicted felon—did not change, subsection (a)(3)(A) was revised to prohibit "possession of any *weapon* by a person who: . . . within the preceding 10 years, has been convicted of [certain enumerated felonies]." K.S.A. 2014 Supp. 21-6304(a)(3)(A). Subsection (b) of the statute was revised to provide that "[c]riminal possession of a *weapon* by a convicted felon is a severity level 8, nonperson felony." K.S.A. 2014 Supp. 21-6304(b). And particularly relevant here, the Legislature added a subsection (c), which provided a definition for the word "weapon" to include a knife: "(c) As used in this section: (1) 'Knife' means a dagger, dirk, switchblade, stiletto, straight-edged razor or any other dangerous or deadly cutting instrument of like character; and (2) 'weapon' means a firearm or a knife." K.S.A. 2014 Supp. 21-6304(c)(1), (c)(2).

Although we cannot say for sure, it appears that the letter given to Harris by his parole officer and the KDOC Supervision Handbook, both of which permitted Harris to possess the pocketknife at issue, were based on the version of K.S.A. 21-6304 that existed prior to its amendment, effective July 1, 2014. As the district court noted, the information provided by the parole officer and the Handbook was inaccurate. But under

11

the mistake of law defense provided in K.S.A. 2014 Supp. 21-5207(b)(4), the issue is not whether the information provided by one legally authorized to interpret a statute is accurate or inaccurate. The fact that the information may be inaccurate is precisely why the Legislature permits mistake of law to be used as a defense. Instead, the question is whether the statements of Harris' parole officer and the excerpts from the Handbook constitute an official interpretation by a public officer or agency legally authorized to interpret the term "weapon" as used in K.S.A. 2014 Supp. 21-6304.

There is no dispute here that the Kansas Department of Corrections is an administrative agency. See *Muldrow v. Hannigan*, 27 Kan. App. 2d 662, Syl. ¶ 2, 8 P.3d 12 (2000), *disapproved of on other grounds by Parsons v. Bruce*, 270 Kan. 839, 19 P.3d 127 (2001). K.S.A. 75-5201 sets out the purpose of this agency as follows:

> "It is the intent of the legislature that . . . the secretary of corrections, his or her agents, subordinates and employees . . . will construe and apply this act . . . to rehabilitate, train, treat, educate and prepare persons convicted of felony in this state for entry or reentry into the social and economic system of the community upon leaving the custody of these state agencies and officers."

Moreover, there is no dispute that a parole officer is a public officer. K.S.A. 2016 Supp. 21-5111(aa)(5) defines "public officer" as "a law enforcement officer." In turn, K.S.A. 2016 Supp. 21-5111(p)(2) defines "'law enforcement officer'" as "any officer of the Kansas department of corrections." In K.S.A. 75-5216, the Kansas Legislature set out the duties of parole officers. Under Kansas law, parole officers are required to "furnish to each person released under their supervision a written statement of the conditions of . . . postrelease supervision and shall give instructions regarding these conditions." K.S.A. 75-5216. If an individual violates the conditions of his or her postrelease supervision the Secretary of Corrections is authorized to issue a warrant for his or her arrest. K.S.A. 2016 Supp. 75-5217(a). A parole officer is authorized to arrest an individual who violates

conditions of postrelease and must notify the Secretary of how the individual violated the conditions. K.S.A. 2016 Supp. 75-5217(a), (b).

Having determined that the Kansas Department of Corrections is an agency and Harris' parole officer is a public officer, we now must determine whether the KDOC and Harris' parole officer are legally authorized to interpret the term "weapon" as used in K.S.A. 2014 Supp. 21-6304 for purposes of permitting Harris to utilize the mistake of law defense. Kansas courts previously have addressed the mistake of law defense based on an official interpretation of a statute. In *State v. V.F.W. Post No. 3722*, 215 Kan. 693, 696, 527 P.2d 1020 (1974), the Kansas Supreme Court was tasked with determining whether a district court's interpretation of a statute qualified as "an official interpretation of a statute made by a public officer or agency legally authorized to interpret the statute." The court found that an interpretation by a district court was not covered under the statute equivalent to K.S.A. 2014 Supp. 21-5207(b)(4). The court postulated that language identical to K.S.A. 2014 Supp. 21-5207(b)(4) would apply to "cases involving executive action such as opinions of the attorney general and of the heads of other enforcement agencies." 215 Kan. at 698.

The Kansas Supreme Court also addressed the mistake of law defense in *State v. Jenkins*, 272 Kan. 1366, 39 P.3d 47 (2002). In *Jenkins*, the defendant was charged with involuntary manslaughter. The defendant argued, in part, that he should have been allowed to make a mistake of law defense because the Department of Revenue issued him a driver's license. The defendant argued that because the Department of Revenue issued him a driver's license, he did not realize the imminence of danger to other motorists. The court emphasized that the statute equivalent to K.S.A. 2014 Supp. 21-5207(b)(4) requires an interpretation of a statute defining a crime. 272 Kan. at 1379. The court found that the Department of Revenue's issuance of a driver's license to an individual does not constitute an official interpretation of the statute defining manslaughter. 272 Kan. at

13

1379-80. Instead, the issuance of the driver's license was merely the execution of the Department of Revenue's administrative duties. 272 Kan. at 1380.

Based on the unique facts presented in this case, we find the KDOC and Harris' parole officer are legally authorized to interpret the term "weapon" as used in K.S.A. 2014 Supp. 21-6304 for purposes of permitting Harris to utilize the mistake of law defense. Like the Kansas Supreme Court contemplated in *V.F.W. Post No. 3722*, this is a case where there was an executive action by the head of an enforcement agency. See 215 Kan. at 698. The action taken was the creation of the KDOC Supervision Handbook, which sets forth the statutory and regulatory conditions of postrelease supervision for distribution to individuals placed on postrelease supervision. Through the Handbook and Harris' parole officer, the Department of Corrections carries out its statutorily mandated purpose "to rehabilitate, train, treat, educate and prepare persons convicted of felony in this state for entry or reentry into the social and economic system of the community." K.S.A. 75-5201. As part of that process, the Department of Corrections is required to educate individuals on the statutory and regulatory conditions of postrelease supervision. Both the parole officer and the Handbook are part of that education. In order to properly educate individuals on postrelease supervision, the Department of Corrections must be legally authorized to interpret statutes. To that end, the Department of Corrections incorrectly informed Harris that the applicable statutes and regulations permitted Harris to carry a pocketknife. Unlike the situation in *Jenkins*, this is not merely a situation where a permit or license was issued. See 272 Kan. at 1379-80. Here, Harris' parole officer, who is a public officer as defined by statute, incorrectly advised him that he was allowed to have a pocketknife less than 4 inches in length while on postrelease, so long as it was not used in a threatening manner. And the Handbook advised Harris that "[a]n ordinary pocket knife . . . is <u>not</u> considered by law to be a dangerous knife, or a dangerous or deadly weapon or instrument."

The district court erred in excluding evidence from the KDOC Supervision Handbook and Harris' parole officer. A plain reading of the applicable statutes indicates that the Secretary of Corrections, through the Department of Corrections, and Harris' parole officer, who is a public officer, were authorized to interpret the statute. The Handbook and the information provided to Harris by his parole officer constituted official interpretations of the statute.

b. *Harmless error*

But the wrongful exclusion of evidence does not, in and of itself, require reversal of a criminal conviction. To decide whether the district court's decision to exclude evidence from the KDOC Supervision Handbook and Harris' parole officer based on a mistake of law defense was harmless error, this court must apply the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011). See *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015). In *Ward*, our Supreme Court held that to find an error harmless under K.S.A. 60-261, K.S.A. 60-2105, and the United States Constitution, a Kansas court must be able to declare the error "did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome," i.e., "there is no reasonable possibility that the error contributed to the verdict." 292 Kan. at 565-66.

There is no dispute that Harris intended his defense to the charge of possessing a weapon by a felon to be his reliance on statements from his parole officer and the KDOC Supervision Handbook stating that he could possess a knife at issue. See K.S.A. 2014 Supp. 21-5207(b)(4). And based on our analysis above, we have determined that the statements of his parole officer and the excerpts from the Handbook constitute an official interpretation by a public officer or agency legally authorized to interpret the term "weapon" as used in K.S.A. 2014 Supp. 21-6304. Because exclusion of the evidence implicates Harris' right under the state and federal constitutions to present his theory of his defense, this court can declare this error harmless only if the State proves "beyond a

15

reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., proves there is no reasonable possibility that the error affected the verdict." *Ward*, 292 Kan. at 569 (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]); see *State v. Evans*, 275 Kan. 95, 102, 62 P.3d 220 (2003) (recognizing defendant's constitutional right to present theory of defense); see also *State v. Brown*, 298 Kan. 1040, 1051, 318 P.3d 1005 (2014) (if constitutional harmless error standard is met, then lower statutory standard under K.S.A. 60-261 is also satisfied). As the party benefiting from the error, the State bears the burden of convincing this court that the court's error in excluding the evidence at issue here was harmless. *State v. Herbel*, 296 Kan. 1101, 1110, 299 P.3d 292 (2013).

In an attempt to convince this court there is not a reasonable probability that the outcome of the trial would have been different had the court allowed Harris to introduce the parole officer's testimony and the KDOC Supervision Handbook—both of which permitted Harris to possess the pocketknife at issue—the State points to the fact that Harris was permitted to present a defense that the pocketknife was not a weapon but instead was a tool that he needed for work. We are not persuaded by the State's position. The fact that Harris may have needed to possess a pocketknife to discharge his duties at work is not a legal defense to the criminal charge lodged against him. But under K.S.A. 2014 Supp. 21-5207(b)(4), Harris' reasonable belief that possessing the pocketknife did not constitute a crime is a defense to the charge against him if he acted in reliance on an official interpretation of the statute defining the crime made by a public officer or agency legally authorized to interpret that statute. That is precisely the case here; thus, there is at least a reasonable probability that the outcome of the trial would have been different had the court allowed Harris to introduce the parole officer's testimony and the Handbook to the jury at trial in this case. Accordingly, the conviction is reversed and the charge remanded for a new trial at which Harris shall be permitted to introduce into evidence the parole officer's testimony and the Handbook.

16

3. *Cumulative error*

Because we are reversing Harris' conviction and remanding the charge for a new trial at which Harris shall be permitted to introduce into evidence the parole officer's testimony and the KDOC Supervision Handbook, Harris' claim of cumulative error is moot.

4. *Criminal history*

Finally, Harris argues that the district court violated his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution as recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 435 (2000), when it sentenced him without requiring the State to allege his criminal history in the complaint and proving it to the jury. Harris concedes that the Kansas Supreme Court has already decided this issue against him but raises it to preserve the issue for federal review. See *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002).

This court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its earlier position. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). There is no such indication here. Therefore, the district court did not err when it considered Thomas' criminal history without requiring that the State first allege it in the complaint and prove it beyond a reasonable doubt to a jury.

Affirmed in part, reversed in part, and remanded with directions.